UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
```

BANCORP SERVICES, LLC and ADDLE    :
MANAGEMENT LLC,    :
   :
               Plaintiffs,    :
   :
     -against-    :
   :
AMERICAN GENERAL LIFE INSURANCE    :
COMPANY,    :
   :
              Defendant.    :

```
------------------------------------------------------------X
```

┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____    │
│ DATE FILED:___2/11/16___         │
└─────────────────────────────────┘

14-CV-9687 (VEC)

<u>MEMORANDUM</u>
<u>OPINION & ORDER</u>

VALERIE CAPRONI, United States District Judge:

      Plaintiffs, Bancorp Services LLC ("Bancorp Services") and its affiliate Addle

Management LLC ("Addle Management"),  initiated this action against Defendant American

General Life Insurance Company ("AGL"), alleging that AGL used confidential information

obtained pursuant to a non-disclosure agreement to develop a financial services product similar

to one Plaintiffs offered to their customers.  AGL moves to dismiss the Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) and (7), arguing: (1) the Amended

Complaint does not state a claim, (2) non-party Benefit Finance Partners, LLC ("Benefit

Finance")—a joint venture between Bancorp Services and non-party Zurich Benefit Finance,

LLC ("Zurich")—is a necessary and indispensable party that cannot be joined, and (3) Plaintiffs'

group pleading fails to show that each Plaintiff is entitled to relief.  AGL's Motion is DENIED as

to Plaintiffs' claims for breach of contract, GRANTED as to Bancorp Service's claims for unjust

enrichment, misappropriation of trade secrets and confidential information, and unfair

competition, and DENIED as to Addle Management's claims for unjust enrichment,

misappropriation of trade secrets and confidential information, and unfair competition.

## BACKGROUND[1]

### A.  The Pre-2008 BOLI Market and Stable Value Protection

Plaintiffs develop and own structured financial products that are sold to large insurance companies, financial institutions, and Fortune 500 companies.  Am. Compl. ¶ 2.  Specifically, Plaintiffs own products related to business-owned life insurance ("BOLI") plans.  *Id.*  BOLI plans allow companies to buy life insurance policies on the lives of their employees, with the company as the beneficiary of the policy.  *Id.* ¶ 11.  There are tax benefits associated with BOLI plans.  *Id.*  A BOLI plan has to be accounted for on the books of the company that owns the plan; because the financial holdings that make up part of the BOLI plan fluctuate in value with the market and because those assets must be marked to market, a BOLI plan can create volatility in the company's financial statements.  *Id.* ¶¶ 12-14.

To address BOLI plans' impact on companies' financial statements, in the mid-1990s, Plaintiffs developed a proprietary financial product called Stable Value Protection ("SVP").  *Id.* ¶ 15.  The SVP product amortizes gains and losses in the financial holdings associated with a BOLI plan over time and thus allegedly minimizes volatility while complying with applicable accounting rules.  *Id.*  SVP products, also called wraps, are usually sold to BOLI owners as an option under the BOLI plan.  *Id.* ¶ 16.  The company that provides the SVP wrap bears the volatility risk and, in return, is paid a fee.  *Id.* ¶ 18.  The SVP product allegedly sparked exponential growth in the BOLI market from the mid-1990s through 2008, resulting in the sale of more than $100 billion dollars in BOLI plans with SVP wraps.  *Id.*  ¶ 19.

During this time, Plaintiffs licensed their SVP products to insurance companies to be sold with BOLI plans.  *Id.* ¶ 20.  In addition, through Benefit Finance, a joint venture of Bancorp

---

[1]      For the purposes of this Motion, the Court assumes the well-pled factual allegations of the Amended Complaint to be true.  *See Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015).

Services and Zurich, Plaintiffs have contracted with life insurance companies to sell their SVP products with BOLI plans. *Id.* Zurich has sold $10 billion in BOLI plans incorporating Plaintiffs' SVP products. *Id.*

### B. The Post 2008 BOLI Market and Plaintiffs' Addle SVP Product

During the financial crisis in 2008, SVP providers suffered heavy losses. *Id.* ¶ 23. Consequently, many SVP providers exited the market, and companies virtually ceased buying BOLI plans. *Id.* ¶¶ 24, 25.

Noting the need for greater stability for SVP providers, from 2008 through 2013, Plaintiffs and their majority owner, Seth Koppes, invested human capital and $10 million in development and marketing costs to develop a better SVP product. *Id.* ¶ 26. The result was a new proprietary product, the Addle SVP wrap. *Id.* ¶ 27. Plaintiffs allege that the product was poised to reopen the BOLI market and was projected to result in $150 billion in contracts, producing hundreds of millions of dollars in fees for Plaintiffs. *Id.* ¶¶ 28, 29.

### C. Plaintiffs and AGL and Plaintiffs' Efforts to Protect Their SVP Products

Plaintiffs have taken various precautions since the mid-1990s to protect their proprietary SVP products, including maintaining standards and procedures to protect their technology systems, retaining professionals to audit their technology, and requiring non-disclosure agreements with the employees of partners and affiliates and with existing and potential business partners. *Id.* ¶¶ 30-34.

Starting in 1998, Plaintiffs, both directly and through Benefit Finance, contracted with AGL to offer and sell BOLI plans that incorporated Plaintiffs' SVP products. *Id.* ¶ 21. AGL has sold $700 million worth of BOLI plans incorporating Plaintiffs' SVP products; in connection with those sales, Plaintiffs have collected approximately $50 million in fees, and AGL has collected approximately $40 million in fees. *Id.* ¶ 22.

Starting in 1998, Plaintiffs and their affiliates and AGL entered into four confidentiality and non-disclosure agreements to protect Plaintiffs' confidential information regarding its proprietary SVP products.  *Id.* ¶ 35.  These agreements include a January 13, 2010 Non-Disclosure and Restricted Use Agreement (the "2010 NDA") made between Bancorp Services and AGL in advance of Plaintiffs' disclosure of the Addle SVP product.  *Id.*[2]  It is this contract that Plaintiffs allege AGL has breached.  *Id.* ¶¶ 73, 79.

### D.  Plaintiffs and AGL, the Addle SVP Product, and the 2010 NDA

The 2010 NDA defines confidential information broadly and prohibits AGL from using or disclosing confidential information, including any information derived from Bancorp Services' affiliates, without the express written consent of Bancorp Services.  *Id.* ¶¶ 37, 38; Def. Mem., Wade Decl., Ex. 9 ¶ 1 (Dkt. 29).[3]  The 2010 NDA provides that Bancorp Services' affiliates include entities "under common control with [Bancorp Services]."  Am. Compl. ¶ 38; Def. Mem., Wade Decl., Ex. 9 at 1.  Because Seth Koppes directly or indirectly owns 97% of

---

[2]     The other three agreements are: (1) an August 3, 1998 confidentiality agreement between AGL and Benefit Finance (the "1998 Confidentiality Agreement"); (2) a January 21, 1999 Private Placement Agreement between Benefit Finance and AGL that expressly incorporated the 1998 Confidentiality Agreement provisions (the "1999 Private Placement Agreement"); and (3) a February 26, 1999 Administrative Services Agreement between AGL and Benefit Finance in which AGL agreed to comply with the 1998 Confidentiality Agreement (the "1999 Administrative Services Agreement").  *Id.* ¶ 35.

[3]     Defendant includes the 2010 NDA as an exhibit to its Motion to Dismiss.  When deciding a motion to dismiss, a Court must generally either ignore documents outside of the complaint or treat the motion as a motion for summary judgment.  *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).  A complaint is, however, "deemed to include . . .  any statements or documents incorporated in it by reference."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citation omitted).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation omitted).  "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."  *Cortec Indus.*, 949 F.2d at 48.

    Plaintiffs' Amended Complaint explicitly references the 2010 NDA, and the 2010 NDA is integral to the Amended Complaint because it is the basis for Plaintiffs' breach of contract claim.  Bancorp Services had actual notice of the contents of the 2010 NDA because it was a party to the contract.  Accordingly, the Court may—and will—consider the 2010 NDA in deciding Defendant's Motion to Dismiss.

Bancorp Services and 100% of Addle Management, Addle Management is an affiliate of Bancorp Services under the terms of the 2010 NDA. Am. Compl. ¶ 38. The 2010 NDA provides Bancorp Services and its affiliates with the following protections: (i) confidential information is protected regardless of whether the information is a trade secret, (ii) improvements to the SVP product are the property of Bancorp Services alone regardless of whether AGL makes the improvements, and (iii) Bancorp Services is entitled to injunctive relief if AGL breaches the 2010 NDA. *Id.* ¶¶ 39, 40; Def. Mem., Wade Decl., Ex. 9 ¶¶ 1, 5.

Plaintiffs disclosed the Addle SVP product to AGL pursuant to and in reliance on the confidentiality protections in the 2010 NDA. Am. Compl. ¶¶ 36, 38, 43. Plaintiffs disclosed the Addle SVP product with the understanding that AGL would offer a BOLI plan with an SVP wrap based on the Addle SVP product, just as AGL had done previously with other SVP products developed by Plaintiffs. *Id.* ¶ 43. In discussions with Plaintiffs, AGL claimed that it preferred not to be first to market with the Addle SVP and resisted offering a BOLI plan with the Addle SVP wrap. *Id.* ¶ 44. In July 2011 and July 2012, Plaintiffs and another insurance company executed two BOLI plans with SVP wraps based on the Addle SVP product. *Id.* ¶ 45. On August 21, 2012, Plaintiffs met with AGL to discuss the use of the Addle SVP product in AGL insurance products, and Plaintiffs allegedly disclosed confidential information and trade secrets during the meeting. *Id.* ¶¶ 47, 48. AGL allegedly expressed strong interest in the Addle SVP product but said that it could not incorporate the Addle SVP into its products at that time because of an ongoing reorganization. *Id.* ¶¶ 50, 51.

On May 7, 2013, AGL asked Plaintiffs to terminate the 2010 NDA. *Id.* ¶ 54. Plaintiffs agreed, contingent on the continued protection and non-disclosure of the confidential information Plaintiffs had previously shared with AGL, a condition unacceptable to AGL. *Id.* ¶¶ 55, 56. Nevertheless, for a time, AGL did not press its request to terminate the 2010 NDA. *Id.* ¶ 56.

During this time, customers specifically requested insurance products from AGL with the Addle SVP wrap, but AGL refused to provide such products, claiming it was still evaluating the Addle SVP wrap. *Id.* ¶ 58.

Also during this time, allegedly in response to AGL's renewed interest, Plaintiffs and their affiliates continued to share Addle SVP product information with AGL. For example, in November and December 2013, in response to a request from a customer to migrate its legacy SVP wrap to the Addle SVP wrap, Plaintiffs sent documentation to AGL regarding the most recent Addle SVP product. *Id.* ¶ 59. Subsequently, Plaintiffs again shared confidential information with AGL about the Addle SVP product to facilitate a presentation on the product to AGL's management committee. *Id.* ¶ 60. A week later, AGL returned that information, claiming that no one at AGL had reviewed it. *Id.* ¶ 61. Also at that time, AGL informed Zurich and Plaintiffs that it would not replace a client's existing SVP wrap with the Addle SVP wrap unless Plaintiffs agreed that the materials Plaintiffs had shared were not subject to any confidentiality agreement, including the 2010 NDA. *Id.* Plaintiffs refused. *Id.* ¶ 62. By this time, AGL had allegedly received full documentation and a practical demonstration of the Addle SVP product. *Id.* ¶ 63. In February 2014, AGL requested new details regarding the Addle SVP while also insisting it would not use the product unless Plaintiffs abandoned the 2010 NDA. *Id.* ¶ 65. In a May 2014 meeting, AGL told Plaintiffs that it would not abide by the 2010 NDA with respect to the Addle SVP product. *Id.* ¶ 66.

In August 2014, Plaintiffs allegedly discovered that AGL was using and disclosing the Addle SVP wrap in its BOLI plan products. *Id.* ¶ 68. AGL allegedly continues to market such

products, and Plaintiffs have learned that AGL is selling a product that allegedly copies the core methodology of the Addle SVP wrap.  *Id.* ¶ 69.

## DISCUSSION

### I.      **Benefit Finance Is Not a Necessary Party**

AGL argues that the Amended Complaint must be dismissed pursuant to Rule 12(b)(7) because Benefit Finance is a necessary and indispensable party that cannot be joined because it has an arbitration agreement with AGL.  Def. Mem. 9 (Dkt. 28).  Specifically, AGL contends that Benefit Finance is a necessary and indispensable party under Rule 19 because it is a direct party to the three confidentiality agreements that preceded the 2010 NDA and that are described by Plaintiffs in the Amended Complaint and because Plaintiffs are in essence also bringing this lawsuit on behalf of Benefit Finance.  *Id.* at 9-11.  In response, Plaintiffs maintain that they are not raising claims pursuant to the three earlier confidentiality agreements; Plaintiffs assert that they described the earlier agreements in the Amended Complaint merely to illustrate Plaintiffs' consistent efforts to protect their SVP products.  Pls. Opp. 9 (Dkt. 34).  Plaintiffs argue that Benefit Finance is neither a party to the 2010 NDA nor a necessary party.  *Id.* at 9-14.  The Court agrees with Plaintiffs.

Rule 12(b)(7) states that an action must be dismissed for failure to include a party under Rule 19.  Fed. R. Civ. P. 12(b)(7).  Rule 19 establishes a two-part test to determine whether an action must be dismissed for failure to join a party.  *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010) (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)).  First, the Court must determine whether the party is required under Rule 19(a), and second, the Court must determine whether the party is indispensable under Rule 19(b).  *Id.* (citation omitted).  If the party is both required and indispensable, the Court must dismiss the action.  *Id.* (citation omitted).

Pursuant to Rule 19, a party is required if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  The first prong of Rule 19 asks whether the court can grant complete relief in the absence of the non-party, focusing solely on the existing parties.  *Fed. Ins. Co.*, 758 F. Supp. 2d at 257 (citing *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006); *Arkwright–Boston Mfrs. Mut. Ins. Cc. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985)).  The second prong focuses on the non-party by asking whether the non-party's absence will impede its ability to protect its own interests.  *Fed. Ins. Co.,* 758 F. Supp. 2d at 257 (citing *MasterCard Int'l, Inc.*, 471 F.3d at 386-87).  In addition, the second prong requires that the non-party claim an interest in a subject related to the action.  *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (citation omitted).  Finally, the third prong considers whether the non-party's absence will result in inconsistent obligations for a party to the extent that the party cannot comply with a court order without breaching another court's order on the same subject.  *Fed. Ins. Co.*, 758 F. Supp. 2d at 258 (citing *Gibbs Wire & Steel Co., Inc. v. Johnson*, 255 F.R.D. 326, 330 (D. Conn. 2009)).  A party cannot be indispensable unless it is a required party.  *Id.* at 259 (citations omitted).  Moreover, "joinder under Rule 19(a) requires an extraordinary showing of need."  *Reinforced Concrete & Masonry Const., Inc. d/b/a Broad Const. v. Hudson Ins. Co.*, No. 14-CV-1705(SAS), 2014 WL 6888764, at *3 (S.D.N.Y. Dec. 8, 2014); *see also Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015) ("'Federal courts are extremely reluctant to grant motions to dismiss based on

nonjoinder.'" (quoting 7 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1609 (3d ed. 2015))).

Benefit Finance is not a required party under Rule 19.  According to the Amended Complaint, Plaintiffs base their claims on the 2010 NDA.  Am. Compl. ¶¶ 73, 79.  Benefit Finance is not a party to the 2010 NDA.  *See* Def. Mem., Wade Decl., Ex. 9.  "A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract."  *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) (quotation omitted).  Because Bancorp Services and AGL are the only parties to the 2010 NDA, *see* Def. Mem., Wade Decl., Ex. 9, the Court can grant complete relief to Plaintiffs without Benefit Finance.  In addition, Plaintiffs are not parties to the three confidentiality agreements that preceded the 2010 NDA, *see* Def. Mem., Wade Decl., Exs. 6-8, so Benefit Finance's rights under those agreements are not at issue in this action.  Thus, Benefit Finance's absence from this action will not impede its ability to protect its interests under those agreements.  Finally, Benefit Finance has not claimed an interest in a subject relating to this action, and the Court does not foresee the parties being subject to simultaneous contradictory court orders due to Benefit Finance's absence.[4]  In short, Benefit Finance is neither a required nor indispensable party in this action.

## II.    Plaintiffs Have Not Improperly Group-Pled

AGL contends that the Amended Complaint should be dismissed because Plaintiffs have improperly group-pled in violation of Rule 8(a)(2).  Def. Mem. 23.  The problem, AGL believes,

---

[4]        In addition, AGL argues that Plaintiffs are bound by the arbitration provisions in the 1999 Private Placement Agreement and the 1999 Administrative Services Agreement because they have purportedly received a direct benefit under these agreements.  Def. Mem. 11-12 n.14; Def. Reply 3-4 (Dkt. 36).  As explained above, those agreements are not at issue in this case; Plaintiffs do not bring claims pursuant to those agreements, and Plaintiffs are not a party to those agreements.  Even if Plaintiffs were required to arbitrate under those agreements, the claims in this case arise solely from the 2010 NDA, a separate agreement that does not have an arbitration provision.

is that the Amended Complaint defines Plaintiffs Bancorp Services and Addle Management and their respective affiliates and representatives collectively as "Bancorp," and the Amended Complaint refers almost exclusively to "Bancorp," thereby obscuring allegations regarding actual ownership of the Addle SVP product information. *Id.* at 23-25. Plaintiffs argue that they have not improperly group pled because the Amended Complaint gives AGL proper notice of the claims against it, especially given that there are only two plaintiffs and one defendant and that each Plaintiff individually asserts its claims. Pls. Opp. 11 n.15. The Court agrees with Plaintiffs, although it is a close call, and the Court does not condone the lack of clarity in Plaintiffs' Amended Complaint.

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." *Holmes v. Allstate Corp.*, No. 11 CIV. 1543 (LTS) (DF), 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012) (citation omitted), *report and recommendation adopted*, No. 11 CIV. 1543(LTS)(DCF), 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012). Rule 8(a) sets a lenient standard. *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). Dismissal under Rule 8(a) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (quotation omitted).

While Plaintiffs' Amended Complaint is far from a model of clarity, AGL has fair notice of the claims against it. Through their Amended Complaint, Plaintiffs have adequately notified AGL that each Plaintiff claims: AGL breached the 2010 NDA by using and sharing confidential

10

information regarding the Addle SVP product, Am. Compl. ¶¶ 71-73, 76-78; AGL misappropriated trade secrets regarding the Addle SVP product, *id.* ¶¶ 81-85; AGL misappropriated confidential information regarding the Addle SVP product, *id.* ¶¶ 90-93; AGL unfairly competed with Plaintiffs by improperly obtaining and using confidential information and trade secrets regarding the Addle SVP product, *id.* ¶¶ 100-108; and AGL has been unjustly enriched at Plaintiffs' expense by using the misappropriated Addle SVP product information and by failing to pay Plaintiffs for the use of that information, *id.* ¶¶ 110-112.  Plaintiffs have, therefore, satisfied the bare minimum in providing fair notice to AGL regarding the claims against it.

As AGL points out, however, Def. Mem. 24, Plaintiffs' group pleading obscures whether both Bancorp Services and Addle Management have a proprietary interest in the Addle SVP product information.  Nevertheless, this lack of clarity does not render the Amended Complaint so ambiguous that its true substance is disguised.  *See Wynder,* 360 F.3d at 80.  Moreover, because AGL is the only defendant, there is no confusion as to which defendant allegedly committed which wrongful act, which is the usual concern under Rule 8(a).  *See, e.g.*, *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, No. 14-CV-8916(JMF), 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015) (discussing group pleading "to the extent that it even applies in cases against only one party"); *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014) ("As a general matter, pleadings are required to specify 'which defendant is alleged to have committed a particular . . . act.'" (citation omitted)); *Holmes*, 2012 WL 627238, at *25 (although plaintiffs group-pled their injuries, it was their failure to differentiate among defendants so as to allege each particular defendant's misconduct that warranted dismissal under Rule 8(a)); *Am. Sales Co. v. AstraZeneca AB*, No. 10 CIV. 6062(PKC), 2011 WL 1465786, at *5 (S.D.N.Y. Apr.

14, 2011) ("A complaint should offer 'specification' as to the 'particular activities by any particular defendant'" (quoting *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007))).

Accordingly, AGL's Motion to Dismiss the Amended Complaint on the basis of improper group pleading is denied.

### III.  Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) is Granted in Part and Denied in Part

#### A.  Legal Standard

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  A plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Courts must "'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"  *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).  Furthermore, courts are generally confined to "the four corners of the complaint" and must "look only to the allegations contained therein."  *Perez v. Westchester Foreign Autos, Inc.*, No. 11–CV–6091(ER), 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

#### B.  Defendant's Motion to Dismiss Plaintiffs' Breach of Contract Claims Is Denied

AGL asserts that Plaintiffs' breach of contract claims should be dismissed pursuant to Rule 12(b)(6) because: (1) Bancorp Services, which purportedly does not own the confidential information at issue, has failed to plead any damages caused by AGL's alleged breach of the

2010 NDA; and (2) Addle Management, which adequately alleges damage, is neither a party to nor a third party beneficiary of the 2010 NDA.  Def. Mem. 14-17.  Plaintiffs counter that they have alleged that Bancorp Services suffered damages due to AGL's breach.  Pls. Opp. 15-17.  Plaintiffs also argue that Addle Management was an intended third-party beneficiary of the 2010 NDA.  *Id.* at 17.  The Court finds that Plaintiffs have adequately alleged both that Bancorp Services suffered damages and that Addle Management was a third-party beneficiary.

The 2010 NDA provides that it is governed by New York law.  Def. Mem., Wade Decl., Ex. 9, ¶ 11.  Under New York law, to state a claim for breach of contract "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).  At the motion to dismiss stage, a plaintiff "'need only plead allegations from which damages attributable to defendant's [breach] might be reasonably inferred.'"  *Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013) (alteration in original) (quoting *Rock City Sound, Inc. v. Bashian & Farber, LLP*, 903 N.Y.S.2d 517, 520 (2d Dep't 2010)).

The Court can reasonably infer from the Amended Complaint that AGL's alleged breach of the 2010 NDA damaged Bancorp Services.  The Amended Complaint alleges that Plaintiffs' business is to license SVP products to insurance companies and to contract with those companies to sell BOLI plans that incorporate Plaintiffs' SVP products; Plaintiffs have allegedly earned $50 million in fees from conducting this business with AGL alone.  Am. Compl. ¶¶ 20, 22.  The Amended Complaint further alleges that Plaintiffs invested $10 million to develop and market the Addle SVP product, *id.* ¶ 26, and that, absent AGL's alleged breach of the 2010 NDA, Plaintiffs would have gained hundreds of millions of dollars in fees from sales and licensing of the Addle SVP wrap, *id.* ¶ 29.  Although Plaintiffs group plead this portion of the Amended

Complaint, making no distinction between Bancorp Services and Addle Management, based on the Amended Complaint and drawing all inferences in favor of Plaintiffs, it is reasonable to infer from the group pleading that both Addle Management and Bancorp Services have some kind of proprietary interest in the Addle SVP product information and stood to gain financially from that interest. As stated earlier, the Court does not condone this kind of group pleading; nevertheless, AGL has fair notice of the claim asserted so as to enable it to answer, conduct discovery, and prepare for trial. *See Salahuddin*, 861 F.2d at 42. These allegations adequately plead damages for this stage of the proceedings, but Plaintiffs will need to show more to survive any motion for summary judgment. Namely, Plaintiffs will be required to show that both Bancorp Services and Addle Management had a proprietary interest in the alleged confidential information and that each suffered damages due to AGL's breach of the 2010 NDA.

"Under New York law, in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party." *Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006) (citing *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005)), *aff'd sub nom. Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115 (2d Cir. 2008)). The identity of the third-party beneficiary does not need to be stated in the contract, however. *MK W. St. Co. v. Meridien Hotels, Inc.*, 584 N.Y.S.2d 310, 313 (1992). To the extent that there is a genuine issue regarding the parties' intent to benefit another by the contract, the question of intent is an issue of fact to be tried. *Id.*

Viewing the facts in the light most favorable to Addle Management, Addle Management alleges a viable breach of contract claim as a third party beneficiary. The 2010 NDA applies to the confidential information of Bancorp Services' affiliates. Am. Compl. ¶ 38; Def. Mem., Wade Decl., Ex. 9, ¶ 1. Under the 2010 NDA, an affiliate of a party to the NDA (*i.e.*, an affiliate

of Bancorp Services and AGL) includes an "entity . . . under common control with the Party."

Am. Compl. ¶ 38; Def. Mem., Wade Decl., Ex. 9, at 1.  Plaintiffs allege that Bancorp Services

and AGL intended to confer a benefit on Bancorp Services' affiliates because the 2010 NDA

protects against the unauthorized use and distribution of affiliates' confidential information.  Am.

Compl. ¶¶ 37-38; Def. Mem., Wade Decl., Ex. 9, ¶¶ 1, 2.  Addle Management is an affiliate of

Bancorp Services as defined by the 2010 NDA because Seth Koppes owns a majority interest of

both companies.  Am. Compl. ¶ 38.  Thus, the Amended Complaint adequately alleges that

Addle Management is within the class of intended beneficiaries of the 2010 NDA, and, as such,

it may enforce the 2010 NDA.  *Southridge Capital Mgmt., LLC v. Lowry*, 188 F. Supp. 2d 388,

397 (S.D.N.Y. 2002) ("[A] third party may enforce a contract if it is within the class of intended

beneficiaries of the contract even if not named or known of at the time." (citation omitted)).[5]

Accordingly AGL's Motion to Dismiss Plaintiffs' breach of contract claims is denied.

**C.**    **Bancorp Services' Unjust Enrichment Claim Is Dismissed; Addle Management's Unjust Enrichment Claim Survives**

AGL moves to dismiss Plaintiffs' unjust enrichment claims because: (1) the 2010 NDA

precludes the unjust enrichment claim because it governs the subject matter of the unjust

enrichment claim; and (2) Plaintiffs fail adequately to allege that AGL was enriched at Plaintiffs'

expense.  Def. Mem. 21, 22.  Plaintiffs claim that they pled unjust enrichment in the alternative

to their contract claims and that AGL was unjustly enriched by not compensating Plaintiffs for

---

[5]     AGL argues that the 2010 NDA expressly states that it is for the benefit of the parties as defined in the 2010 NDA and that the 2010 NDA did not include affiliates in that definition.  Def. Mem. 17.  The Court agrees with Plaintiffs that the inurement clause in the 2010 NDA does not necessarily demonstrate an intent not to benefit affiliates as defined in the 2010 NDA, including Addle Management.  Pls. Opp. 17 n.25 (citing *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 55 (2d Cir. 2012) (upholding a third-party beneficiary claim despite inurement clause, holding that other sections of the contract "plausibly demonstrate an intent to benefit the [plaintiff]")); *see also Bild v. Weider*, 567 F. App'x 49, 52 (2d Cir. 2014) ("[Cross-appellant] has cited no authority to support his arguments that the incorporation of a confidentiality clause or the existence of an inurement clause alone operates to preclude third-party beneficiary status . . . .").

the information it misappropriated and by selling a competing product based on Plaintiffs'

confidential information.  Pls. Opp. 24-25.  The Court agrees with AGL as to Bancorp Services

only and dismisses Bancorp Services' unjust enrichment claim.

"Unjust enrichment is an equitable remedy that is available in cases where there is no

contract between the parties."  *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 530

(S.D.N.Y. 2007).  "To state a claim for unjust enrichment in New York, a plaintiff must allege

that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the

circumstances were such that equity and good conscience require defendants to make

restitution."  *Id.* at 531 (citations omitted).  The existence of a valid and enforceable contract

precludes recovery for unjust enrichment that is in addition to or in conflict with the terms of the

contract.  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 39 (S.D.N.Y. 1991)

(citation omitted).  Because Federal Rule of Civil Procedure Rule 8(e)(2) establishes a liberal

alternative pleading policy, *id.* (citations omitted); *Labajo,* 478 F. Supp. 2d at 531, "[c]ourts

generally dismiss claims for [unjust enrichment] on the pleadings only when it is clear from the

face of the complaint that there exists an express contract that clearly controls," *MacPhee v.

Verizon Commc'ns Inc.*, No. 06-CV-7870(BSJ), 2008 WL 162899, at *6 (S.D.N.Y. Jan. 15,

2008) (quotation omitted); *see also Coty, Inc. v. L'Oreal S.A.*, 320 F. App'x 5, 6 (2d Cir. 2009)

("[I]t is black-letter law in New York that recovery on an equitable theory of unjust enrichment

is not permitted where the matter at issue is covered by a valid, enforceable contract." (citations

omitted)).

There is no dispute that there is a valid and enforceable contract between Bancorp

Services and AGL on the subject at issue in this case.  *See* Def. Reply 10 n.14.  Therefore,

Bancorp Services' unjust enrichment claim is dismissed as duplicative.  *Karmilowicz v. Hartford

Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157 (2d Cir. 2012) (affirming dismissal of unjust

enrichment claim because "[u]nder New York law, 'quasi-contractual . . . relief is unavailable where [as here] an express contract covers the subject matter'" (alteration in original) (internal quotations and citations omitted)).

If Addle Management is found not to be a third party beneficiary of the 2010 NDA, Addle Management's breach of contract claim would fail, but it may still have an unjust enrichment claim in the absence of a governing contract. *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 CIV. 4770(SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (holding that plaintiff may plead unjust enrichment in the alternative in the event the dispute falls outside the scope of the existing contract).  Because there is a dispute over whether Addle Management is actually a third party beneficiary of the 2010 NDA, the Court finds that the Amended Complaint alleges sufficient facts that, if true, would support Addle Management's alternative claim for unjust enrichment.  Specifically, the following allegations suggest that AGL was enriched at Addle Management's expense: AGL had access to Plaintiffs' confidential information regarding the Addle SVP product, *see* Am. Compl. ¶¶ 43, 48, 59, 61; the Addle SVP product was expected to result in $150 billion in contracts for the product and millions of dollars in fees for Plaintiffs, *see id.* ¶¶ 28, 29; and AGL has used confidential information about the Addle SVP product to market its own SVP product without Plaintiffs' authorization, *see id.* ¶¶ 68-70.  Plaintiffs allege that AGL has been unjustly enriched because it retained the valuable Addle SVP product information and used that information to create a competitive product (even if AGL has not yet sold its product); that suffices to survive a motion to dismiss.  *See Lake Erie Distribs., Inc. v. Martlet Importing Co.*, 634 N.Y.S.2d 599, 602 (4th Dep't 1995) (holding that whether plaintiffs conferred benefit upon defendants in form of enhanced product recognition and good will may not be decided on a motion to dismiss); *see also In re Worldcom, Inc.*, 371 B.R. 33, 38 (Bankr. S.D.N.Y. 2007) ("A person may be unjustly enriched not only where he receives money or

property, but also where he otherwise receives a benefit . . . [such as] where he is saved an expense." (citing *Blue Cross of Cent. New York, Inc. v. Wheeler*, 461 N.Y.S.2d 624 (4th Dep't 1983))).

Accordingly, at this stage in the litigation, the Court will permit Addle Management to maintain its claim for unjust enrichment in the alternative to its contract claims based on its alleged status as a third party beneficiary of the 2010 NDA.

### D.    Defendant's Motion to Dismiss Bancorp Services' Misappropriation and Unfair Competition Claims Is Granted

AGL contends that Plaintiffs' tort claims—misappropriation of trade secrets and confidential information and unfair competition—should be dismissed as duplicative of their breach of contract claims.  Def. Mem. 18.  Plaintiffs argue that their tort claims are not duplicative because they are predicated on AGL's bad faith instead of on a contractual or confidential relationship between Plaintiffs and AGL.  Pls. Opp. 23.  The Court finds that Bancorp Services' tort claims are duplicative and dismisses those claims.

"When a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, . . . are generally precluded, unless based on a duty independent of the contract." *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011).  Specifically, "misappropriation claims cannot lie where they are simply a restatement of a breach of contract claim." *Cereus Prod. Dev., Inc. v. Boom LLC*, No. 14 CIV. 4292(PAC), 2015 WL 3540827, at *7 (S.D.N.Y. June 5, 2015).  "A misappropriation claim 'must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.'"  *Id.* (quoting *Reed Constr. Data Inc. v. McGraw–Hill Cos., Inc.*, 745 F. Supp. 2d 343, 353 (S.D.N.Y. 2010)).  Similarly, no

unfair competition claim "lies where its underlying allegations are 'merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract.'" *Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (quoting *Clark-Fitzpatrick Inc. v. L.I.R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).

Plaintiffs' misappropriation and unfair competition claims are entirely based on alleged conduct that is proscribed by the 2010 NDA—namely disclosure and use of information that was protected by the 2010 NDA. Plaintiffs have not alleged that AGL had any duty to them independent of the 2010 NDA, nor have they alleged circumstances extraneous to that contract in support of their non-contract claims. Therefore, the Court grants AGL's Motion to Dismiss the misappropriation and unfair competition claims as to Bancorp Services. *See, e.g.*, *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294(LTS)(HBP), 2015 WL 5008762, at *6 (S.D.N.Y. Aug. 24, 2015) (dismissing unfair competition counterclaim as duplicative of contract claim where the only basis for claim is contractual relationship); *A Star Grp., Inc. v. Manitoba Hydro*, No. 13 CIV. 4501(PAC), 2014 WL 2933155, at *7 (S.D.N.Y. June 30, 2014) (dismissing unfair competition and misappropriation claims as duplicative of contract claim where the parties did not have a business relationship independent of the contract), *aff'd*, 621 F. App'x 681 (2d Cir. 2015); *Sandrino v. Michaelson Assocs., LLC*, No. 10 CIV. 7897(BSJ), 2012 WL 5851135, at *10 (S.D.N.Y. Nov. 19, 2012) (dismissing misappropriation and unfair competition counterclaims because defendants merely reiterated allegations underlying contract claim).[6]

---

[6]     Plaintiffs argue that their misappropriation and unfair competition claims are not duplicative of their contract claims because the non-contract claims are based on "improper means" and "bad faith." Pls. Opp. 23. Nevertheless, "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (quotation omitted). Plaintiffs

AGL's Motion to Dismiss Bancorp Services' misappropriation and unfair competition claims is granted.

### E.   Defendants' Motion to Dismiss Addle Management's Misappropriation and Unfair Competition Claims Is Denied

As with Addle Management's claim for unjust enrichment, because the parties dispute whether Addle Management is a third party beneficiary of the 2010 NDA, Addle Management can plead these non-contract claims in the alternative pursuant to Federal Rule of Civil Procedure 8(d).  *See Paysys Int'l v. Atos SE*, No. 14 CIV. 10105(SAS), 2015 WL 4533141, at *4 (S.D.N.Y. July 24, 2015) (denying motion to dismiss unfair competition claim as duplicative of contract claim because plaintiff could plead unfair competition claim in the alternative where defendants might not be party to contract); *Exelis, Inc. v. SRC, Inc.*, No. 5:12-CV-0858(GTS)(TWD), 2013 WL 5464706, at *4 (N.D.N.Y. Sept. 30, 2013) (allowing contract and misappropriation claims in the alternative under Rule 8(d)); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 414 (S.D.N.Y. 2010) (allowing contract and tort claims in the alternative in the event the contract claims fail).

Although they may be pled in the alternative, Addle Management must nevertheless adequately plead its tort claims.  To plead misappropriation of a trade secret under New York law, a party must plead "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quotation omitted).  "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to

---

have done no more than that by alleging that AGL did not intend to maintain confidentiality pursuant to the 2010 NDA.

obtain an advantage over competitors who do not know or use it." *Id.* (quotation omitted). Similarly, "[t]o state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage." *Reed Const. Data*, 745 F. Supp. 2d at 352 (citations omitted). Finally, to state an unfair competition claim, a party must allege "that the [d]efendant[] misappropriated the [p]laintiff['s] labors, skills, expenditures, or good will and displayed some element of bad faith in doing so." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 617 (S.D.N.Y. 2010) (quotation omitted). Courts often analyze misappropriation of trade secret and confidential information and unfair competition claims together. *A Star Grp., Inc.*, 2014 WL 2933155, at *8; *Geo Grp., Inc. v. Cmty. First Servs., Inc.*, No. 11-CV-1711(CBA), 2012 WL 1077846, at *3 (E.D.N.Y. Mar. 30, 2012).

AGL contends that these claims should be dismissed as to Addle Management because the Amended Complaint fails to identify the trade secret and confidential information at issue and because Addle Management did not have a confidential relationship with AGL. Def. Mem. 12, 20. Plaintiffs argue that they are not required to identify the trade secrets and confidential information with specificity to survive a motion to dismiss and that these claims are based on misappropriation by improper means and bad faith, not a confidential relationship between Addle Management and AGL. Pls. Opp. 19, 23. Addle Management adequately—but barely—pleads its tort claims in the alternative to its contract claim.

Addle Management narrowly passes the threshold for identifying the trade secrets and confidential information at issue. At the pleadings stage, the plaintiff must "generally identify the trade secrets at issue," *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, No. 14-CV-2796(PKC), 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014), but need not plead the trade secret with specificity in the complaint, *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 86

(S.D.N.Y. 2009) (citing *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) (collecting cases denying motions to dismiss where trade secrets were not alleged with particularity)).

New York courts generally consider the following factors to determine whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Faiveley Transp. Malmo AB*, 559 F.3d at 117 (citation omitted).  "[I]t is not necessary to plead every single factor to state a claim." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015).  Courts tend to apply a similar standard with respect to confidential information.  *See, e.g.*, *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 411 (E.D.N.Y. 2012).

The following allegations suggest that Addle Management may possess confidential information and a trade secret: Plaintiffs have a proprietary accounting methodology that provides the benefits of SVP wraps for BOLI plan owners while mitigating volatility risks for SVP wrap providers and complying with accounting standards, Am. Compl. ¶ 27; Plaintiffs took measures to guard the secrecy of this information, *id.* ¶¶ 30-41; the information is worth hundreds of millions of dollars in fees to Plaintiffs, *id.* ¶ 28; and Plaintiffs spent five years and $10 million to develop the information, *id.* ¶ 26.  Accepting all these allegations as true and drawing all inferences in Addle Management's favor, these allegations suffice to survive a motion to dismiss.  Addle Management will, of course, be required to identify the specific trade secret and confidential information to survive any motion for summary judgment.

Addle Management also satisfactorily alleges, but barely, that AGL discovered the trade secret and confidential information by improper means and bad faith.  Plaintiffs have not alleged that Addle Management and AGL had a confidential relationship outside of the 2010 NDA. Therefore, to plead misappropriation, Plaintiffs must allege that AGL discovered the trade secret and confidential information by improper means.  *See Faiveley Transp. Malmo AB*, 559 F.3d at 117 (requiring for the second element of a misappropriation claim that "defendants used that trade secret in breach of an agreement, confidential relationship or duty, *or* as a result of discovery by improper means" (emphasis added)).  "Improper means" include "fraudulent misrepresentations to induce disclosure," and "[i]n general they are means which fall below the generally accepted standards of commercial morality and reasonable conduct."  *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 273 (S.D.N.Y. 2014) (quoting Restatement (First) of Torts § 757 (1939)), *aff'd sub nom. Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015).  Similarly, the bad faith element of an unfair competition claim "is not implicated in every instance of disgraceful business behavior."  *Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*, No. 5:03-CV-1120(DEP), 2006 WL 1304699, at *3 (N.D.N.Y. May 9, 2006) (citations omitted).  The contention in the Amended Complaint that AGL requested the confidential and proprietary Addle SVP product information with the intent to use and disclose that information—supported by claims that AGL asked to be released from the confidentiality obligations of the 2010 NDA on several occasions and that AGL delayed using the Addle SVP product—is only barely more than a conclusory allegation of improper means and bad faith.  *See* Am. Compl. ¶¶ 52, 57-66.  Nevertheless, accepting all allegations as true and drawing all inferences in Addle Management's favor, the Court finds that the allegations are sufficient to survive a motion to dismiss.

Therefore, AGL's Motion to Dismiss Addle Management's misappropriation and unfair competition claims is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  The Clerk of the Court is respectfully directed to terminate docket entry twenty-seven.


**SO ORDERED.**

**Date:  February 11, 2016**
**      New York, New York**

**VALERIE CAPRONI**
**United States District Judge**